**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000780
29-MAY-2013
08:55 AM**

NO. CAAP-12-0000780

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF P CHILDREN

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 11-00098)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Reifurth, JJ.)

Mother-Appellant (Mother) appeals from the Order Terminating Parental Rights, entered July 19, 2012 in the Family Court of the First Circuit[1] (family court).

On appeal, Mother claims the family court erred by finding that she was not currently willing and able to provide a safe family home for her three children.  Mother contends that social worker, Laura Bailey (Bailey), should not have been allowed to testify at trial;  and that another social worker, Debbie Yoshizumi (Yoshizumi), should not have been allowed to testify by telephone on July 19, 2012 after the court continued her testimony until August 31, 2012.  Mother specifically challenges Findings of Fact (FOFs) 32, 50, 53, 54, 63, 67, 71, 73, 82, 83, 84, and 96.  Lastly, Mother argues there was no FOF

_____

[1]  The Honorable Sherri-Ann L. Iha presided.

indicating the Permanent Plan dated December 27, 2011 is in the best interest of the children, as required by Hawaii Revised Statutes (HRS) § 587A-33(a)(3) (Supp. 2012).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we conclude Mother's appeal is without merit.

The Department of Human Services (DHS) adduced clear and convincing evidence that Mother was not currently willing and able to provide a safe family home to the children, even with the assistance of a service plan. As part of Mother's service plan, she underwent an substance abuse assessment which recommended intensive outpatient treatment. Mother elected not to participate in the recommended intensive outpatient treatment in favor of meetings with her own therapist, Craig T. Twentyman, PhD (Dr. Twentyman.) Dr. Twentyman was not aware of the Mother's substance abuse assessment that recommended intensive outpatient treatment. Dr. Twentyman was also not aware that Mother had ever tested positive for drugs despite Mother testing positive for opiates on April 12 and 14, 2011, and testing positive for methamphetamine on April 28, May 3, and August 16, 2011. At the time of the July 2012 trial, Dr. Twentyman had not drug tested mother since 2011. During the pendency of this case, Mother failed to appear for at least 12 scheduled drug testings, which were considered to be presumptive positive drug test results. Mother was removed from the Hina Mauka random drug testing program in February 2012. Mother's substance abuse issues were clearly not resolved and Mother was not likely to address the issue after discontinuing random drug testing. Yet, Dr. Twentyman did not believe that Mother was a regular user of drugs.

Dr. Twentyman clinically discharged Mother after she completed her anger management and domestic violence counseling.

However, Bailey opined that Mother could not provide a safe family home because of unresolved domestic and substance abuse issues, as evidenced by Mother's neighbors reporting that police were called to Mother's residence due to her fighting with her husband. Mother's fighting with her husband was one of the primary issues upon which this case was initiated.

Bailey was called and qualified as an expert witness in the area of social work and child protective services. As an expert witness, Bailey was not required to have personal knowledge of the case, could rely upon hearsay testimony as the basis for her opinions, and could rely upon the record that was already in evidence. Mother presents no specific argument as to why cross-examination of Bailey was not meaningful. In addition, Mother claims that Yoshizumi, and not Bailey, should have testified at trial. Yoshizumi did testify at trial. Furthermore, Mother does not specify any error that resulted from Yoshizumi testifying as planned on July 19, 2012 instead of August 31, 2012. Yoshizumi was called as an expert witness in the area of social work and was to provide her opinion in this area. She was not required to have personal knowledge of the case. Yoshizumi also testified as a lay witness to the events that she participated in as a social worker assigned to this case.

Mother argues FOFs 32, 50, 53, 54, 63, 67, 71, 73, 82, 83, 84, and 96 are clearly erroneous. Mother's opening brief fails to comply with Hawai‘i Rules of Appellate Procedure Rule 28(b)(4) by failing to (1) contain in its points of error section, a concise statement that sets forth in separately numbered paragraphs the alleged error committed by the court; (2) indicate where in the record the alleged error occurred; and (3) indicate where in the record the alleged error was objected to or the manner in which the alleged error was brought to the

attention of the court. Therefore, the challenges to specific FOFs are waived. In any event, the FOFs are without merit.

Mother objects to FOFs 32, 82, 83, and 84 on the basis that Mother is willing and able to provide a safe family home. As explained above, the family court did not err by concluding that Mother was not willing and able to provide a safe family home, even with the assistance of a service plan. Therefore, FOFs 32, 82, 83, and 84 are not clearly erroneous.

FOF 50 states "Mother subjected the Children to imminent and threatened harm by using illegal drugs and failing to resolve domestic violence issues in the family home[,]" and is not clearly erroneous because Mother did use illegal drugs. Furthermore, Mother also failed to resolve domestic violence issues in the family home despite receiving counseling for that issue from Dr. Twentyman.

FOF 53 states "Mother also smoked a '$20 paper' once a week and at times daily from the end of 2010 to September 2011, and was unsuccessful efforts [sic] to cease or control use[,]" and is not clearly erroneous given the unchallenged FOF 52 that states "Mother started using methamphetamine at age 18, smoking a '$20 paper' everyday [sic] increasing to smoking a '$50 paper' on a daily basis."

Mother challenges FOFs 54, 63, and 67 on the basis that she participated in drug treatment with Dr. Twentyman. The FOFs state in relevant part:

> 54. The substance abuse assessment recommended that Mother participate in an Intensive Outpatient Substance Abuse Treatment Program until clinically discharged, and participate with the DHS random drug monitoring program. Despite this recommendation, Mother has failed to participate in any substance abuse treatment program.
>     . . . .
>
> 63. Mother discontinued participation in random urinalysis in February 2012 and has not addressed her substance abuse issues since then.

. . . .

67.    Throughout the pendency of this case, Mother has
       failed to participate in and complete a
       substance abuse treatment program.

Dr. Twentyman testified that Mother participated in anger management, parenting, individual, and couples counseling with him. In addition, he had Mother tested for drugs. However, Dr. Twentyman did not testify that he provided Mother with drug treatment services, even though he is also a certified substance abuse counselor. Therefore, FOF 54 is not clearly erroneous. Dr. Twentyman testified that he did not drug test Mother after December 2011. Therefore, the drug testing with Dr. Twentyman that ended in 2011 does not refute Finding of Fact No. 63 which found that Mother discontinued random urinalysis testing in February 2012 and did not address her substance abuse issues any further. Since Dr. Twentyman did not testify to providing substance abuse treatment to Mother, and there was no other evidence that Mother completed any other substance abuse treatment program, FOF 67 is not clearly erroneous.

Mother claims FOF 71, which found "Mother was aware that it was her responsibility to obtain and distribute progress reports and completion certificates from her therapists[,]" is clearly erroneous, is without merit. Yoshizumi testified that it was explained to Mother that if she was going to her own provider then she should obtain the reports and distribute it to all parties. Yoshizumi testified that Mother did not attend the scheduled ohana conference and therefore, Mother did not submit any reports or completion certificates to her at that conference. Yoshizumi's testimony was not indicative of her inability to recall facts of the case and the family court found Yoshizumi's testimony credible in FOF 103.

Mother challenges FOF 72 that found "[o]n May 3, 2012 and again on June 4, 2012, DHS received reports that the Honolulu

5

Police Department was called due to a domestic dispute between Mother and Stepfather." Mother objects to the FOF because Yoshizumi testified that she did not know who called the police and who was fighting at Mother's residence. However, it was Mother's neighbors who reported to DHS that Mother and Stepfather were involved in domestic disputes. Therefore, FOF 73 accurately reflects that DHS received reports that the police were called to domestic disputes between Mother and Stepfather.

Lastly, Mother disputes FOF 96 which found that DHS gave Mother every reasonable opportunity to remedy the problems that put her children at substantial risk of being harmed in the family home and to then reunify with her children. Mother points to the service plan which specified "treatment by Dr. Twentyman and Dr. Twentyman did not provide appropriate treatment services and his expert opinion was not credible." Mother's service plan called for Dr. Twentyman and Comprehensive Counseling & Support Services of Catholic Charities to both provide domestic violence and anger management education to Mother. The service plan also called for Mother to participate in individual and marriage counseling with Dr. Twentyman. Mother was clinically discharged by Dr. Twentyman after completing anger management and domestic violence counseling. DHS did not allege that Dr. Twentyman's services with respect to providing anger management and domestic violence counseling was inappropriate. Rather, DHS faulted Mother for failing to demonstrate appropriate behavior despite completing the counseling with Dr. Twentyman. The family court did find that Dr. Twentyman's testimony was not credible based on (1) his opinion that Mother did not have a substance abuse issue, even though Mother had tested positive numerous times and failed to submit to drug testing which is presumed to be a positive test result; (2) his failure to know that Mother attempted to submit a non-human testing sample; (3) his failure to be informed about

6

Mother's substance abuse assessment; and (4) his opinion that Mother's drug use was an isolated incident.

Mother argues that "[t]here is no finding of fact that the permanent plan is in the best interest of the three children as required by section 587A-33(a)(3), [HRS]."

HRS § 587A-33(a) (Supp. 2012) states in relevant part:

> §587A-33 **Termination of parental rights**
> **hearing.** (a) At a termination of parental rights
> hearing, the court shall determine whether there
> exists clear and convincing evidence that:
>
> (1) A child's parent whose rights are subject to
> termination is not presently willing and
> able to provide the parent's child with a safe
> family home, even with the assistance of a service
> plan;
>
> (2) It is not reasonably foreseeable that the
> child's parent whose rights are subject to
> termination will become willing and able to provide
> the child with a safe family home, even with the
> assistance of a service plan, within a reasonable
> period of time, which shall not exceed two years
> from the child's date of entry into foster care;
>
> (3) The proposed permanent plan is in the best
> interests of the child. In reaching this
> determination, the court shall:
>
> (A) Presume that it is in the best interests
> of the child to be promptly and
> permanently placed with responsible and
> competent substitute parents and family
> in a safe and secure home; and
>
> (B) Give greater weight to the presumption
> that the permanent plan is in the child's
> best interest, the younger the child is upon
> the child's date of entry into foster care; and
>
> (4) The child consents to the permanent plan if
> the child is at least fourteen years old,
> unless the court consults with the child in
> camera and finds that it is in the best interest
> of the child to proceed without the child's consent.

HRS § 587A-33(a)(3) only requires the family court to "determine" that the proposed permanent plan is in the best interest of the child. Conclusion of Law 13 states "[t]he Permanent Plan dated

December 27, 2011 is in the best interest of the Children." The family court satisfied HRS § 587A-33(a)(3).

Therefore,

IT IS HEREBY ORDERED that the Order Terminating Parental Rights, entered July 19, 2012 in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, May 29, 2013.

On the briefs:

Herbert Y. Hamada
for Mother-Appellant.

Mary Anne Magnier
Asami M. Williams
Deputy Attorneys General,
for Petitioner-Appellee
Department of Human Services.

Presiding Judge

Associate Judge

Associate Judge